# In the United States Court of Federal Claims

No. 15-272C

(Filed Under Seal:  April 4, 2017)

(Reissued:  April 12, 2017)

| | |
|---|---|
| **GREENLAND CONTRACTORS I/S,** ) | Post-award bid protest; issues previously |
| ) | reserved by the court and not addressed by |
| **Plaintiff,** ) | the Federal Circuit on appeal from the |
| ) | court's earlier judgment |
| **v.** ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| **Defendant,** ) | |
| **and** ) | |
| ) | |
| **EXELIS SERVICES A/S,** ) | |
| ) | |
| **Defendant-Intervenor.** ) | |
| ) | |

James J. McCullough, Fried, Frank, Harris, Shriver & Jacobson LLP, Washington, D.C., for plaintiff.  With Mr. McCullough on the briefs were Michael J. Anstett, Aaron T. Tucker, and Samuel W. Jack, Fried, Frank, Harris, Shriver & Jacobson LLP, Washington, D.C.

William P. Rayel, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.  With Mr. Rayel on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Benjamin C. Mizer, former Principal Deputy Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, Scott D. Austin, Assistant Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C.

Kevin P. Connelly, Vedder Price P.C., Washington, D.C., for defendant-intervenor.  With Mr. Connelly on the briefs were Eric J. Marcotte, Marques O. Peterson, Kelly E. Buroker, and Caroline A. Keller, Vedder Price P.C., Washington, D.C.

**OPINION AND ORDER**[1]

---

[1]Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the Court of Federal Claims ("RCFC") and the protective orders entered in this case as part of consolidated cases, it was initially filed under seal.  The parties were requested to review this order and to provide proposed redactions of any confidential or proprietary information.  The resulting redactions are shown by brackets enclosing asterisks, e.g., "[***]."

LETTOW, Judge.

This post-award bid protest arises from a solicitation by the United States Air Force ("Air Force" or "government") for the operation, maintenance, and support of Thule Air Base, an Air Force Base located in northwestern Greenland.  On October 31, 2014, the Air Force notified Exelis Services A/S ("Exelis Services") that it was receiving the contract award based upon the Air Force's determination that Exelis Services offered the lowest-priced, technically acceptable proposal.  The other three competing offerors, Per Aarsleff A/S ("Per Aarsleff"), Copenhagen Arctic A/S ("Copenhagen Arctic"), and Greenland Contractors I/S ("Greenland Contractors"), the incumbent contractor, each filed protests in this court to challenge the contract award.  After consolidating the three protests, the court granted the protesters' motions for judgment on the administrative record and set aside the Air Force's award, finding that Exelis Services was ineligible to receive a contract award under the terms of the solicitation.  *See generally Per Aarsleff A/S v. United States*, 121 Fed. Cl. 603 (2015) ("*Per Aarsleff I*"), *rev'd*, 829 F.3d 1303 (Fed. Cir. 2016) ("*Per Aarsleff II*").[2]  The Federal Circuit then reversed the court's judgment, holding that Exelis Services was eligible for and lawfully received the contract award.  *Per Aarsleff II*, 829 F.3d at 1316.

In accord with the mandate from the court of appeals, the court vacated its prior judgment and dismissed all three protesters' claims.  Subsequently, Greenland Contractors filed a motion for reconsideration and to amend the judgment, noting that the court had expressly reserved ruling on two of Greenland Contractors' protest grounds in its prior disposition, and that these issues had not been addressed by the Federal Circuit.  The court granted the motion, vacated the dismissal of Greenland Contractors' claims, and severed Greenland Contractors' case from the consolidated cases.[3]  The parties were given the opportunity to submit supplemental briefs and responses, and Greenland Contractors, Exelis Services, and the government have done so.  As a consequence, pending before the court are the two remaining claims that Greenland Contractors raised in its previous motion for judgment on the administrative record and restated in its supplemental brief, *i.e.*, that (1) the Air Force engaged in misleading discussions regarding

---

[2]Contemporaneously with ruling on Exelis Services' eligibility for an award, the court rejected Greenland Contractors' and Copenhagen Arctic's argument that the Air Force was required to evaluate whether offerors maximized Danish and Greenlandic sources, determining that the relevant provision in the solicitation related to administration of the contract and did not create an evaluation criterion.  *Per Aarsleff I*, 121 Fed. Cl. at 631.  The Federal Circuit agreed with this aspect of the court's decision.  *Per Aarsleff II*, 829 F.3d at 1314-16.

[3]The court's grant of Greenland Contractors' motion comported with the so-called "mandate rule," according finality to issues decided by and encompassed within the Federal Circuit's decision on appeal from this court's prior judgment.  *See Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1319-20 (Fed. Cir. 2016); *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371-72 (Fed. Cir. 2014); *Doe v. United States*, 463 F.3d 1314, 1320-22 (Fed. Cir. 2006); *Suel v. Secretary of Health & Human Servs.*, 192 F.3d 981, 984 (Fed. Cir. 1999); *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1382-84 (Fed. Cir. 1999); *cf. SUFI Network Servs., Inc. v. United States*, 817 F.3d 773, 778-80 (Fed. Cir. 2016) (applying the mandate rule in the context of a cause of action subject to the Wunderlich Act).

Greenland Contractors' proposed pricing, and (2) the Air Force did not follow the terms of the RFP by failing to evaluate whether the other offerors justified their significantly lower pricing.

For the reasons stated, Greenland Contractors' motion for judgment on the administrative record with respect to its two remaining claims is denied, and the government's and Exelis Services' cross-motions are granted.

## BACKGROUND AND FACTS[4]

### A.   Thule Air Base

Thule Air Base is located in a remote area of northwestern Greenland.  *Per Aarsleff I*, 121 Fed. Cl. at 607.  This location provides "strategic military advantages in the Arctic region" for the Air Force.  *Id.* at 607.  The Arctic environment, however, also provides "profound logistical challenges . . . in supplying fuel, materials[,] and non-perishable items to individuals working and living on Thule Air Base."  *Id.* at 608.  The base was initially proposed during World War II, initiated in 1946-1951, and reconstructed in 1951-53 upon the adoption by the United States and the Kingdom of Denmark of the 1951 Defense of Greenland Agreement.  *Id.*  Greenland is primarily a self-governing entity of the Kingdom of Denmark, but the Danish government controls Greenland's foreign policy and defense.  *Id.*  "Since the inception of Thule Air Base, the United States and Danish governments have engaged in negotiations regarding contractual opportunities to support the base."  *Id.*  In June 1962, an Aide Memoire prepared by the United States Department of State ("State Department") explicated certain provisions of the 1951 Agreement, particularly with regard to "Danish participation in work in United States defense projects in Greenland."  *Id.* at 609 (quoting AR 20zf-1465).  Then in 1991, the two countries adopted a Memorandum of Understanding, later amended in 2008 and 2009, which emphasized procurement of goods and services from Danish or Greenlandic sources if feasible:

> In accordance with their respective laws and regulations, either [p]arty may award contracts to commercial enterprises for goods and services, including construction projects, in Greenland, and shall procure directly from Danish/Greenlandic sources.  When procurement from such sources is not feasible, U.S. requirements may be satisfied by procurement from U.S. or other sources. Either [p]arty may

---

[4]The recitations that follow reflect a summary of the court's prior findings of fact in *Per Aarsleff I*, which were based upon the administrative record of the procurement filed pursuant to RCFC 52.1(a).  *See Per Aarsleff I*, 121 Fed. Cl. at 607 n.2 (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (noting that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court")).  Additional factual findings are set out in this opinion.

To the extent the court cites to the administrative record, such citations will refer to the record filed in *Per Aarsleff*, No. 15-215 (consolidated).  The administrative record was filed on March 18, 2015 in the protest of Per Aarsleff, and then was supplemented on April 7 and 15, 2015 for the protests of Greenland Contractors and Copenhagen Arctic, respectively.  The record is divided into tabs, but the pages are sequentially numbered without regard to the tabs.  The court's citations to the administrative record will designate the tab, followed by the page, *e.g.*, AR 83-4608 refers to tab 83, page 4608 of the record.

use its own military or civilian personnel to perform services or construction projects.

*Id.*

### B.   The Thule Air Base Procurement

#### 1.   The solicitation.

In 2013, the Air Force and the State Department entered into discussions with the Danish Ministry of Finance regarding eligibility criteria for a solicitation for a contract to support Thule Air Base, and the parties ultimately reached an agreement in December 2013. *See Per Aarsleff I*, 121 Fed. Cl. at 609-11.[5]  On March 28, 2014, the Air Force issued its Request for Proposals ("RFP"), solicitation number No. FA2523-12-R-0006, "to obtain operation, support, and maintenance services at Thule Air Base." *Id.* at 613.  "The RFP sought a hybrid firm-fixed-price contract, comprising economic-price-adjustment and cost-reimbursable contract line items to be awarded on a low-price, technically acceptable ('LPTA') basis." *Id.*[6]  The RFP's technical evaluation included seven sub-factors, with an unacceptable rating for any single sub-factor resulting in a rating of technically unacceptable. *Id.*  Additionally, the RFP required that an offeror's price be "reasonable, affordable[,] and balanced." *Id.*  Section M of the RFP also "advised [offerors] to clearly show justification for unique practices that significantly lower pricing." *Id.*

#### 2.   The evaluations and award.

Four offerors submitted proposals in response to the Thule Air Base solicitation: Exelis Services, Per Aarsleff, Copenhagen Arctic, and Greenland Contractors, the incumbent and current contractor for the base. *Per Aarsleff I*, 121 Fed. Cl. at 615.  The Air Force initially evaluated all four proposals as technically unacceptable, but also included each proposal in the competitive range. *Id.* at 616.  After issuing numerous evaluation notices and holding oral discussions with each of the offerors, the Air Force determined that Greenland Contractors' proposal was technically acceptable. *Id.*  The Air Force then held a second round of discussions, and subsequently found that all four proposals were technically acceptable. *Id.*  Exelis Services proposed the lowest price and received the contract award. *Id.* at 617.  Per Aarsleff submitted

---

[5]The eligibility criteria for the solicitation were the primary issue in the prior proceedings and were addressed in detail by both this court and the court of appeals. *See Per Aarsleff I*, 121 Fed. Cl. at 609-20, 624-30, 634-36; *Per Aarsleff II*, 829 F.3d at 1306-14.  The issue has been resolved by the Federal Circuit and is unrelated to Greenland Contractors' remaining claims.

[6]The Air Force's LPTA award was governed by Part 15 of the Federal Acquisition Regulations ("FAR"), Contracting by Negotiation. *Per Aarsleff I*, 121 Fed. Cl. at 613 (citing 48 C.F.R. ("FAR") §§ 15.000-.609).  Additionally, although Section 813(b) of the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 813(b), 130 Stat. 2000, 2270 (2016), placed restrictions on LPTA procurements, this section does not apply here because the solicitation in this procurement was issued prior to its enactment.

the second-lowest price, Copenhagen Arctic submitted the third-lowest price, and Greenland Contractors submitted the fourth-lowest price. *Id.*[7]

### C.  GAO Protests

Per Aarsleff, Copenhagen Arctic, and Greenland Contractors each filed protests in November 2014 at the Government Accountability Office ("GAO") to challenge the Air Force's contract award to Exelis Services. *Per Aarsleff I*, 121 Fed. Cl. at 618.  The primary issue before GAO was whether Exelis Services was ineligible for the award under the terms of the RFP on the ground that Exelis Services was "a subsidiary of a foreign (United States) company." *Id.* at 619 (quoting *Per Aarsleff A/S*, B-410782 et al., 2015 WL 1004252, at *5 (Comp. Gen. Feb. 18, 2015) ("*Per Aarsleff* (GAO)")).  GAO rejected the protesters' claims and determined that Exelis Services was eligible. *Per Aarsleff* (GAO), 2015 WL 1004252, at *9.

Additionally, GAO addressed Greenland Contractors' assertion that "the Air Force failed to evaluate whether Exelis Services' proposed price was too low, and . . . that the awardee's low price demonstrates that the awardee will not comply with Danish and Greenlandic labor law, as required by the RFP." *Per Aarsleff* (GAO), 2015 WL 1004252, at *13.  GAO rejected this protest ground because "the solicitation did not require the Air Force to conduct a price realism evaluation." *Id.* at *14.  According to GAO, the RFP's provision advising offerors to "show justification for unique practices that significantly lower pricing" did not obligate the Air Force "to evaluate the risk of poor performance stemming from a low price." *Id.* (internal citation and quotation marks omitted).  Accordingly, the protests were denied. *Id.* at *16.

### D.  Prior Decisions Addressing This Procurement

In March 2015, Per Aarsleff, Copenhagen Arctic, and Greenland Contractors each filed suit in this court to challenge the Air Force's contract award to Exelis Services. *Per Aarsleff I*, 121 Fed. Cl. at 620.  The court consolidated the three cases and "ordered that the disposition of the motions for preliminary injunction be consolidated with the merits pursuant to RCFC

---

[7]Greenland Contractors, which is owned in part by the Greenland government, is registered as a Danish partnership, and the other three offerors are registered as Danish limited companies. *Per Aarsleff I*, 121 Fed. Cl. at 615.  Exelis Services is a wholly-owned subsidiary of Vectrus Systems Corporation, a company based in the United States. *Id.*  After Exelis Services received the contract award, the Danish government voiced "concerns relating to the interpretation of international agreements between the two governments pertaining to the definition of a Danish/Greenlandic enterprise." *Id.* at 618 (citations omitted).  The United States and Denmark subsequently issued a Joint Statement in March 2015, stating that the "[t]he U.S. Air Force intends to conduct a new acquisition and issue a new request for proposals for the Thule Air Base Maintenance Contract once there is agreement between the United States and the Kingdom of Denmark regarding what constitutes a Danish/Greenlandic enterprise." *Id.* (citation omitted).  In its most recent brief before the court, the government notes that "the United States and Denmark have not yet reached an agreement regarding new eligibility criteria," and that the Air Force has not yet issued a new solicitation. *See* Def.'s Resp. to the Feb. 17, 2017, Suppl. Brs. of Pl. and Def.-Intervenor ("Def.'s Resp. to Suppl. Brs.") at 16 n.10, No. 15-272C, ECF No. 29.  Accordingly, the Air Force's award to Exelis Services remains in effect, Greenland Contractors' further protest grounds remain outstanding, and the court will not address the possibility of a future solicitation that has not yet occurred.

65(a)(2)." *Id.* (citations omitted). The parties thereafter submitted motions and cross-motions for judgment on the administrative record. *Id.*

The court found that "the agency's decision to award Exelis Services the Thule Contract was arbitrary and capricious and not in accord with federal procurement law." *Per Aarsleff I*, 121 Fed. Cl. at 630 (citing 5 U.S.C. § 706(2)(A)). Because "a material term in the RFP required the awardee to be a genuine Danish or Greenlandic enterprise" and Exelis Services was "a subsidiary of a United States (foreign) company," the court held that Exelis Services was not eligible for the award. *See id.* (citations omitted). The solicitation had provided that to be eligible, an offeror "SHALL NOT BE REGISTERED AS A SUBSIDIARY OF [A] FOREIGN COMPANY." *Id.* at 611 (quoting AR 20g-875) (emphasis in original). An official of the United States Embassy in Copenhagen had mistranslated a Danish phase and mistakenly thought that Danish subsidiaries of foreign companies had to be registered as such under Danish corporate law. *See id.* at 624-27. The court set aside the award to Exelis Services after finding that the protesters were sufficiently prejudiced by the agency's error and that the "requirements for issuance of equitable relief [had] been satisfied." *Id.* at 634, 636. Even so, the court rejected Greenland Contractors' and Copenhagen Arctic's argument "that the Air Force failed to evaluate the proposals in accord with Section H-6 and [performance work statement] 3.1.16 of the Solicitation, which required offerors to '[m]aximize . . . contract-related purchases and subcontracts from Danish and Greenlandic sources' and to '[d]ocument and justify any exceptions.'" *Id.* at 631 (quoting AR 88-5227, -5279). The court instead held that "the RFP provisions cited by Greenland Contractors and Copenhagen Arctic establish post-award performance standards that pertain to administration of the contract and do not create a supplementary evaluation criterion." *Id.*

On appeal, the Federal Circuit reversed the court's decision, disagreeing with the court's findings regarding the eligibility of Exelis Services. *Per Aarsleff II*, 829 F.3d at 1306. The court of appeals determined that the eligibility provision in the solicitation was ambiguous, and the Air Force had clarified the meaning of that provision, albeit wrongly in light of the translation error, through questions and answers during the procurement. *Id.* at 1310-11. Under the interpretation of the solicitation set forth by the Air Force's clarification, Exelis Services, as a Danish company, was eligible for the contract award at Thule Air Base even though it was a wholly-owned entity of a foreign, *i.e.*, U.S., company. *Id.* at 1311-12. Further, the court of appeals found that the ambiguity due to the mistaken belief about registration of foreign-owned subsidiaries was patent rather than latent, and that Greenland Contractors and Copenhagen Arctic had therefore waived the right to object to the eligibility provision because both had failed to raise the issue before the close of the bidding process. *Id.* at 1312-14. On the other hand, the Federal Circuit agreed with this court's finding regarding the RFP's reference to Danish and Greenlandic sources, stating that the cited provisions "refer to contract performance, not eligibility criteria." *Id.* at 1314-16.

*E. Greenland Contractors' Remaining Claims*

After receiving the Federal Circuit's reversal mandate, the court vacated the previous judgment in favor of the three protesters and dismissed each protester's case. Order of Oct. 18, 2016, No. 15-215C (consolidated), ECF No. 108. Greenland Contractors subsequently filed a motion for reconsideration and to amend the judgment, relying on the fact that it had raised two protest grounds that were not addressed in the courts' prior opinions. *See generally* Pl. Greenland Contractors I/S's Mot. for Recons. and to Amend the Judgment, No. 15-215C

(consolidated), ECF No. 110.  In its previous decision regarding this procurement, the court had identified Greenland Contractors' further claims but noted that it was not necessary to resolve them:

> Greenland Contractors raises two additional claims, *viz.*, that (1) the Air Force engaged in misleading discussions related to Greenland Contractors' proposed pricing, and (2) that the Air Force was obliged to evaluate whether the other offerors had justified their lower pricing. . . .  In light of the court's rulings on other issues and considering also the court's disposition of the cases, a ruling on Greenland Contractors' further issues is unnecessary.

*Per Aarsleff I*, 121 Fed. Cl. at 634 n.44; *see also* Mem. of Pl. Greenland Contractors I/S in Support of Its Mot. for Judgment on the Administrative Record ("Greenland Contractors' Mot.") at 22-34, No. 15-215C (consolidated), ECF No. 62-1 (explicating the two claims unaddressed by this court).  The Federal Circuit also had not considered these additional claims.  *See generally Per Aarsleff II*, 829 F.3d 1303.

Accordingly, on January 31, 2017, the court granted Greenland Contractors' motion, vacated the previous judgment against the protesters insofar as Greenland Contractors was concerned, and severed Greenland Contractors' case from the consolidated cases.  Order of Jan. 31, 2017, No. 15-215C (consolidated), ECF No. 115.  Although Greenland Contractors' two remaining claims had been briefed in the parties' previous motions and cross-motions for judgment on the administrative record, the court allowed any of the parties, including the four offerors and the government, to submit supplemental briefs and responses.  *Id.*  Greenland Contractors, Exelis Services, and the government chose to do so.  In its supplemental brief, Greenland Contractors restates its previously unaddressed protest grounds, asserting that (1) "the Air Force engaged in misleading discussions with Greenland Contractors concerning its proposed pricing," and (2) "the Air Force failed to adhere to the terms of this procurement's price evaluation scheme by not evaluating whether the other three offerors . . . had justified their 'significantly lower pricing.'"  Suppl. Br. of Pl. Greenland Contractors I/S ("Greenland Contractors' Suppl. Br.") at 1, No. 15-272C, ECF No. 22.

## JURISDICTION

### A.  28 U.S.C. § 1491(b)(1)

The Tucker Act, as amended, provides this court with jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1), added by the Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874 (1996); *see also Systems Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012).  The court accordingly has jurisdiction over Greenland Contractors' post-award bid protest.  *See Per Aarsleff I*, 121 Fed. Cl. at 621-22 (explaining that the court has jurisdiction over the protesters' claims and that the "[t]reaty [b]ar" under 28 U.S.C. § 1502 does not apply even though the solicitation implements the United States' executive agreements with Denmark).

## B.  Standing

To have standing in a bid protest, the protester bringing suit must be an "interested party."  *See* 28 U.S.C. § 1491(b)(1); *Systems Application & Techs.*, 691 F.3d at 1382.  A protester will be an interested party if it can demonstrate that "(1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement."  *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008) (citations omitted).  To prove direct economic interest, the offeror must show that it had a "substantial chance" of receiving the contract but for the government's alleged errors in the procurement process, *i.e.*, that it was prejudiced by such errors.  *Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).  This inquiry is distinct from a prejudice analysis on the merits; "prejudice at the jurisdictional threshold can be satisfied on the basis of the plaintiff's allegations, whereas prejudice on the merits can only be satisfied by the effect of an agency decision adjudged to be unlawful."  *Hyperion, Inc. v. United States*, 115 Fed. Cl. 541, 556 (2014) (citing *Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 696 (2010)).

This court previously found that the protesters had standing to challenge the Air Force's award and specifically rejected Exelis Services' contention that Greenland Contractors lacked standing:

> Greenland Contractors has plausibly alleged that the Air Force committed errors by failing to adhere to various criteria set forth in the RFP and by engaging in misleading discussions regarding pricing.  *See* Greenland Contractors' Mot. at 5-6 ("[A]bsent the Air Force's eligibility and technical acceptability errors, Greenland Contractors would have been the only technically acceptable offeror.  Moreover, the Air Force's flawed pricing evaluation left Greenland Contractors' unreasonably high prices uncorrected and allowed the three lower-priced offerors to propose unjustified lower pricing.").  Contrary to Exelis Services' position, if the court finds Greenland Contractors' protest grounds to be persuasive, it would have a substantial chance to receive the award because the offers submitted by the other bidders would have been found to be flawed.  *See Hyperion*, . . . 115 Fed. Cl. [at] 550 . . . (holding that the fourth-lowest bidder in a LPTA procurement had been sufficiently prejudiced to satisfy the requirement of standing, in a circumstance where the three lower offerors each failed to comply with applicable limitations on subcontracting).  Exelis Services' arguments to the contrary concern the merits of Greenland Contractors' contentions. . . .

*Per Aarsleff I*, 121 Fed. Cl. at 623.  The court's reasoning and conclusion in this respect continue to apply.  Although Greenland Contractors' claims regarding eligibility and the use of Danish and Greenlandic sources have been rejected, *see generally Per Aarsleff II*, 829 F.3d 1303, it still has two remaining protest grounds.  If the court accepts Greenland Contractors' claims that the Air Force engaged in misleading discussions and failed to properly evaluate the pricing of the other offerors, the Air Force's evaluation of both Greenland Contractors' proposal and the other three proposals would be flawed.  Under these circumstances, Greenland Contractors would have a substantial chance of winning the award.  Therefore, even in light of the Federal Circuit's decision on eligibility of offerors in this procurement, Greenland Contractors has standing to pursue its two remaining claims in this court.

## STANDARDS FOR DECISION

The Administrative Procedure Act ("APA"), 5 U.S.C. § 706, governs the court's review of a challenge to an agency's contract award. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Under the APA, the court may set aside an agency decision that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The court's review of agency action is "highly deferential," *see Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000), and the court may not "substitute its judgment for that of the agency," *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated in part by Califano v. Sanders*, 430 U.S. 99, 105 (1977)), *recons. denied*, 60 Fed. Cl. 251 (2004).

Nonetheless, the court may set aside a procurement decision where "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted). First, regarding rationality, the court "must determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (internal citations and quotation marks omitted). An agency's decision lacks a rational basis when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alabama Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The protester "bears a heavy burden of showing that the award decision had no rational basis." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (internal citations and quotation marks omitted). Second, in challenging an agency action on a legal ground, the protester must establish "a clear and prejudicial violation of applicable statutes or regulations." *Impresa Construzioni*, 238 F.3d at 1333 (internal citations and quotation marks omitted).

## ANALYSIS

### A. The Air Force's Discussions with Greenland Contractors

#### 1. Criteria governing discussions.

In its first remaining claim, Greenland Contractors argues that the Air Force engaged in misleading discussions related to Greenland Contractors' proposed pricing, resulting in discussions that were not "meaningful." *See* Greenland Contractors' Mot. at 22-27; Greenland Contractors' Suppl. Br. at 1-2. FAR § 15.306(d) governs "discussions" between a procuring agency and offerors. When an agency conducts such discussions, the contracting officer is required to identify or discuss "deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond." FAR § 15.306(d)(3). In doing so, the agency must provide "meaningful" discussions that are not misleading. *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 715-16 & n.18 (2011), *aff'd*, 475 Fed. Appx. 341 (Fed. Cir. 2012) (citations omitted). To be meaningful, discussions must

"generally lead offerors into the areas of their proposals requiring amplification or correction, which means that discussions should be as specific as practical considerations permit." *Advanced Data Concepts, Inc. v. United States*, 43 Fed. Cl. 410, 422 (1999), *aff'd*, 216 F.3d 1054 (Fed. Cir. 2000) (internal quotation marks and citations omitted). A discussion is misleading when the agency "misdirect[s] the protestor as it revises its proposal." *DMS All-Star Joint Venture v. United States*, 90 Fed. Cl. 653, 670 (2010) (citing cases); *see also D&S Consultants, Inc. v. United States*, 101 Fed. Cl. 23, 40-41 (2011) ("[A]n agency is not permitted to mislead an offeror 'into responding in a manner that does not address the agency's concerns; or that misinforms the offeror concerning its proposal weaknesses or deficiencies.'") (quoting *Analytical & Res. Tech., Inc. v. United States*, 39 Fed. Cl. 34, 48 (1997)), *aff'd*, 484 Fed. Appx. 558 (Fed. Cir. 2012).

Nonetheless, "[t]he scope and extent of discussions are a matter of [a] contracting officer['s] judgment." FAR § 15.306(d)(3); *see also DMS All-Star Joint Venture*, 90 Fed. Cl. at 668 (stating that a contracting officer has "broad discretion" while engaging in meaningful discussions) (quoting *Advanced Data Concepts*, 43 Fed. Cl. at 422). Further, "the contracting officer is not required to discuss every area where the proposal could be improved." FAR § 15.306(d)(3). For example, "if an offeror's costs are not so high as to be unreasonable and unacceptable for contract award, the agency may conduct meaningful discussions without raising the issue of the offeror's costs." *DMS All-Star Joint Venture*, 90 Fed. Cl. at 669 (internal quotation marks and citations omitted); *see also Lyon Shipyard, Inc. v. United States*, 113 Fed. Cl. 347, 356 (2013) (noting that an agency need not "discuss a proposed price that is not considered a significant weakness or deficiency") (citations omitted). The government therefore is not required to "discuss every aspect of [a] proposal that receives less than the maximum score or identify relative weaknesses in a proposal that is technically acceptable but presents a less desirable approach than others." *CRAssociates*, 102 Fed. Cl. at 715 (internal quotation marks and citations omitted).

   *2.   The context for the discussions.*

Here, Greenland Contractors specifically references its first round of discussions with the Air Force, noting that it received more than 50 Evaluation Notices ("EN") from the Air Force regarding its first proposal. *See* AR Tab 156. In one particular EN, the Air Force stated:

   Termination [contract line item number ("CLIN")] X100 has been evaluated as
   not reasonable in accordance with FAR [§] 15.404-1(b)(2)(i). Termination CLIN
   price has been evaluated high in comparison to proposals received. Provide a
   description of what is included within your Termination price or reevaluate your
   Termination price.

AR 156-12365. In response, Greenland Contractors explained that [***]. AR 158-12618. Additionally, Greenland Contractors submitted an updated "Section B Price Worksheet, and an updated summary page of total proposed price as a result of the changes made to Factor 1 ENs." AR 158-12620. After reviewing these responses, the Air Force notified Greenland Contractors that its proposal had been "rated as acceptable in all areas." AR 161-12718. It also found Greenland Contractors' price ratings to be "[r]easonable, [a]ffordable, and [b]alanced," AR 161-12732, and determined that additional ENs were unnecessary, AR 161-12737.

Following the second round of discussions with the other offerors, Exelis Services proposed the lowest price of 2,020,333,220 Danish kroners ("DKK") ($363,925,645) while Greenland Contractors proposed the fourth-lowest price of DKK [***] ($[***]). AR 20c-678. Regarding termination price, Greenland Contractors discovered that its initial termination price of DKK [***] was approximately [***] times as high as the next two lowest prices, which were Exelis Services' price of DKK [***] and Copenhagen Arctic's price of DKK [***]. *See* Greenland Contractors' Mot. at 23 n.5 (citing AR 153-12158 to -211; AR 97-6236; AR 168-14492). Greenland Contractors also learned that its final proposed prices were higher than the other offerors' final proposed prices for several other CLINs, including CLIN X001, X003, X005, X007, and X015. *See id.*, App. A (citing AR 122-8856; AR 135-10439; AR 163-12886; AR 182-16141). Greenland Contractors notes that its prices for those CLINs were often more than [***] times as high as the prices from the other offerors. *See id.* at 26-27. In light of this information, Greenland Contractors argues that "by warning Greenland Contractors of only one CLIN price that was deemed unreasonable, the Air Force misled Greenland Contractors into believing (incorrectly) that its other CLIN prices were reasonable even though they were sometimes even more disparate and 'unreasonable' based on the Air Force's own standard." *Id.* at 27.

### 3.   *The relevant RFP provision.*

Greenland Contractors' mistaken belief regarding its other CLIN prices stemmed from its interpretation of the RFP. Regarding pricing, Section M of the RFP provided:

> Price analysis and competition will be used to determine price reasonableness, affordability, and balanced pricing. In order to be considered for award, the offeror's total evaluated price must be determined reasonable, affordable and balanced. All proposals will be ranked by total evaluated price. Total evaluated price includes the price of all services, supplies and equipment, for the basic year and all option years to include the 12-month extension of services (excluding the Phase-In, Phase-Out, cost-reimbursable [g]overnment-furnished subsistence, travel and supplies, projects and termination costs). The Phase-In price and termination costs will be evaluated for price reasonableness, but will not be included in the total evaluated price used for ranking offerors. Award will be made to the offeror with the lowest total evaluated price, receiving an "acceptable" technical rating.
>
> 1)   Price Reasonableness. The techniques and procedure described under FAR [§] 15.404-1(b) will be used to assess proposal reasonableness.
>
> 2)   Affordability. The affordability assessment will also consider the total estimated contract price as compared to the independent U[.]S[.] [g]overnment estimate for this program.

AR 88-5265. Greenland Contractors asserts that this language required the Air Force to evaluate each CLIN price individually. Greenland Contractors' Mot. at 22; *see also* Combined Reply of Pl. Greenland Contractors I/S in Support of Its Mot. for Judgment on the Administrative Record and in Opp'n to Def.'s and Intervenor's Cross-Mots. ("Greenland Contractors' Reply") at 18, No. 15-215C (consolidated), ECF No. 69. Thus, Greenland Contractors assumed that the Air Force would identify each CLIN that was highly priced during the first round of discussions, not

only termination price.  In contrast, the government argues that the cited provision of the RFP "only required the Air Force to evaluate three types of prices for reasonableness: 1) total evaluated price; 2) the phase-in CLIN; and 3) termination liability CLINs."  Def.'s Cross-Mot. for Judgment on the Administrative Record and Resps. to Pls.' Mots. for Judgment on the Administrative Record ("Def.'s Cross-Mot.") at 54, No. 15-215C (consolidated), ECF No. 66.  Under the government's interpretation, the Air Force would not need to evaluate the price for each CLIN individually.

The dispute between the parties based upon their disparate interpretations of the solicitation poses a question of law that the court reviews *de novo*.  *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 327 (2012) (citing *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004); *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1353 (Fed. Cir. 2004)).  The principles of contract interpretation apply to the interpretation of government solicitations.  *Banknote Corp. of Am.*, 365 F.3d at 1353 n.4 (in turn citing *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997-98 (Fed. Cir. 1996)).  The court must therefore begin by examining the language of the solicitation.  *See Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1038 (Fed. Cir. 2003).  "If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning."  *Banknote Corp. of Am.*, 365 F.3d at 1353 (citing *Coast Fed. Bank*, 323 F.3d at 1038).  The solicitation will only be considered ambiguous if "its language is susceptible to more than one reasonable interpretation."  *Id.* (citing *Grumman Data Sys. Corp.*, 88 F.3d at 997).

Here, the relevant provision of the RFP is neither ambiguous nor indefinite.  Section M states that "[i]n order to be considered for award, the offeror's *total evaluated price* must be determined reasonable, affordable and balanced."  AR 88-5265 (emphasis added).  Section M also specifically identifies two individual CLINs, phase-in price and termination costs, to be evaluated separately from total evaluated price.  *Id.*  Contrary to Greenland Contractors' contention, the pertinent language in the RFP did not identify any other CLINs for this analysis or provide any indication that each and every CLIN would be evaluated independently.[8]  The

---

[8]Greenland Contractors supports its interpretation by noting that subparagraph one, titled "Price Reasonableness," only calls for an assessment of "proposal reasonableness," whereas subparagraph two, titled "Affordability," provides for an assessment of "total estimated contract price."  Greenland Contractors' Mot. at 22 (citing AR 88-5265).  According to Greenland Contractors, this distinction indicates that price reasonableness includes an evaluation of each CLIN price.  *See id.*  However, Greenland Contractors' reliance is misplaced.  The paragraph directly above the "Price Reasonableness" subparagraph expressly and directly states, more than once, that price was to be evaluated based upon total evaluated price.  *See* AR 88-5265.  In light of this explicit reference, subparagraph two provides that "the affordability assessment will *also* consider the total estimated contract price," *id.* (emphasis added), thus indicating that *both* price reasonableness and affordability would be evaluated through total evaluated price.

Greenland Contractors also relies on the first sentence of the pertinent paragraph in Section M of the RFP cited above, which states that "*price* analysis" was to be used in determining "*price* reasonableness, affordability, and balanced pricing."  Greenland Contractors' Reply at 18 (citing AR 88-5265) (emphasis added).  This provision is similarly unavailing because the RFP's use of "price" is explained by the subsequent reference to total evaluated price.  *See* AR 88-5265.  Additionally, the term "price" alone could not reasonably allow Greenland Contractors to believe that every CLIN price would be evaluated separately.

government thus correctly notes that the Air Force was only required to evaluate pricing criteria under the terms of the RFP for total evaluated price, phase-in price, and termination price.

### 4. The specific nature of the discussions.

Because the Air Force found Greenland Contractors' total price to be reasonable, AR 161-12732, the individual CLIN items within that total price were not sufficiently high to create a deficiency or render the proposal unreasonable.  The Air Force was therefore not required to identify the specific CLIN prices that Greenland Contractors now refers to in its brief, even though Greenland Contractors' prices for those items were higher than those of the other offerors.  *See, e.g.*, *DMS All-Star Joint Venture*, 90 Fed. Cl. at 669 ("[I]f an offeror's costs are not so high as to be unreasonable and unacceptable for contract award, the agency may conduct meaningful discussions without raising the issue of the offeror's costs.") (internal quotation marks and citations omitted).  Additionally, the Air Force's decision to identify Greenland Contractors' unreasonably high termination price, AR 156-12365, but not its other high CLIN prices, could not have reasonably misled Greenland Contractors.  The other CLIN prices were not on equal footing with the termination and phase-in CLINs.  The Air Force was thus not arbitrarily picking and choosing CLIN prices to discuss, but rather was addressing pricing for a particular CLIN, termination costs, that had been specifically identified in the RFP.  Accordingly, the identification of the high termination price should not have reasonably indicated to Greenland Contractors that its other CLIN prices were sufficiently low.  *See DMS All-Star Joint Venture*, 90 Fed. Cl. at 671 (holding that the Army did not mislead the offeror when it identified one price concern related to the offeror's proposal, but not other concerns regarding labor salaries and non-labor costs, because the agency did nothing to suggest that the offeror "should not consider lowering certain cost elements").  Greenland Contractors' incorrect assumption regarding its other CLIN prices was based upon its own unjustified interpretation of the solicitation and the Air Force's ENs, not on any misleading conduct by the Air Force.[9]

Greenland Contractors' reliance on precedents where discussions were found to be misleading is also unavailing.  For example, in *Multimax, Inc.*, B-298249.6 et al., 2006 WL 3300346 (Comp. Gen. Oct. 24, 2006), the solicitation at issue required offerors to propose 208 different labor rates.  *Id.* at *2.  Although two of the protesters later discovered that many of their labor rates were significantly higher than the Independent Government Cost Estimate ("IGCE") rates, the agency only identified a few of those problematic rates during discussions and failed to

---

[9]Greenland Contractors also notes that in a separate EN during the first round of discussions, the Air Force stated that "[p]roposed prices cannot be evaluated for reasonableness, affordability or balance in accordance with [the RFP] until ENs for Factor 1 have been resolved and any changes resulting in an impact to price have been incorporated into the price proposal." AR 156-12366.  Greenland Contractors relies on the plural term "prices" to argue that it was misled by the Air Force into believing that the agency was evaluating each of the individual CLIN prices.  *See* Greenland Contractors' Reply at 19.  Greenland Contractors' argument reaches too far.  The reference to the term "prices" merely reflects the three pricing criteria set forth in the RFP –  total evaluated price, phase-in price, and termination price – as well as the fact that many different CLIN prices were encompassed within total evaluated price.  Based upon this EN, it was not reasonable for Greenland Contractors to assume that the Air Force would be evaluating each CLIN separately.

inform the protesters of many others. *See id.* at *8-10.  The agency specifically stated in discussions that it was identifying "the following labor categories" as problematic, *id.* at *9, and it "confirmed during discussions that only the identified labor rates were overstated," *id.* at *10 n.6.  Under those circumstances, GAO found that there was "no reasonable basis for bringing the former rate to the offeror's attention, but not the latter," and held that "the agency's failure to identify the additional rates actually misled the offerors into believing that those rates did not require further adjustment." *Id.* at *9-10.  Here, unlike in *Multimax* where each of the 208 labor rates were evaluated on equal terms, the Air Force did not provide that each CLIN price would be evaluated individually.  Rather, as discussed *supra*, the Air Force specifically notified offerors that only phase-in price and termination price would be assessed separately from total evaluated price.  The Air Force thus had a reason to specifically question Greenland Contractors' termination price.  Because the other CLINs identified by Greenland Contractors fell within total evaluated price, which the Air Force found to be reasonable, *see* AR 161-12732, the Air Force also had a reason for not identifying any additional CLIN prices.  Under these facts, the Air Force was not simply identifying one unreasonably high cost category while ignoring others. *See DMS All-Star Joint Venture*, 90 Fed. Cl. at 671 (distinguishing the facts before the court from the facts in *Multimax* on the same basis).  Further, unlike in *Multimax*, the Air Force did not state or indicate that Greenland Contractors' termination price was the only highly-priced CLIN.

Additionally, in *EFW Inc.*, B-412608, 2016 WL 6919877 (Comp. Gen. Apr. 7, 2016), an offeror alleged that the procuring agency's discussion questions were misleading because they focused on a single discrete area of the offeror's proposal, but "did not address the agency's true concern with respect to the significant weakness assigned to [the offeror's] proposal under factor (1)." *Id.* at *5.  GAO agreed, holding that the agency's questions "were insufficient to alert [the offeror] to the actual breadth of the agency's concerns, and were therefore misleading." *Id.*  Here, in contrast, the Air Force did alert Greenland Contractors to its "true concern," termination pricing.  Greenland Contractors responded to the termination pricing EN by revising its proposal, and the Air Force then determined that Greenland Contractors' proposal was acceptable.  AR 161-12718.  Although the proposal included other highly-priced CLINs, the Air Force viewed those CLINs within Greenland Contractors' total evaluated price and found that price to be reasonable. *See* AR 161-12732.  The mere fact that Greenland Contractors' total price was higher than the prices of the other offerors does not render the price deficient or unreasonable, and the Air Force was therefore not required to raise the issue. *See, e.g.*, *CRAssociates*, 102 Fed. Cl. at 715.[10]

Thus, for the reasons stated, the Air Force did not mislead Greenland Contractors when it engaged in a meaningful discussion related to pricing.

---

[10]Greenland Contractors also relies on *Caddell Constr. Co. v. United States*, 125 Fed. Cl. 30 (2016), where the court found that the agency engaged in misleading discussions by providing inaccurate information to the offeror. *Id.* at 45-46 (finding that the agency's "misleading discussions had a cascading effect in th[e] procurement, causing the awardee to unwittingly base its pricing on false information and the ensuing price evaluation to be a sham.").  The facts of *Caddell*, however, are distinguishable from the protest at issue here because the Air Force did not provide any false or inaccurate information to Greenland Contractors.

B. *The RFP Provision Regarding Justification for "[S]ignificantly [L]ower [P]ricing"*

1. *The relevant RFP provision.*

In its second and final remaining claim, Greenland Contractors argues that the Air Force contravened the RFP by failing to evaluate whether the other offerors had justified their "significantly lower pricing." *See* Greenland Contractors' Mot. at 28; Greenland Contractors' Suppl. Br. at 5. Greenland Contractors contends that the RFP required the Air Force to evaluate an offeror's justification for significantly lower pricing, *see* Greenland Contractors' Mot. at 28, and the government responds that the RFP only advised offerors to justify unique practices that resulted in significantly lower pricing, Def.'s Cross-Mot. at 47. The dispute is based upon a provision in Section M of the RFP, which provides that "[o]fferors are advised to clearly show justification for unique practices that significantly lower pricing." AR 88-5265.[11] Under the plain meaning of this provision, the Air Force was not required to evaluate whether justifications existed for significantly lower pricing generally. Instead, the RFP "advised" offerors to "show justification *for unique practices* that significantly lower pricing." AR 88-5265 (emphasis added). The provision thus permitted the Air Force to evaluate whether offerors had justified unique practices that might have engendered significantly lower pricing, but not whether offerors had justified lower prices generally. As the government notes, Greenland Contractors' interpretation of the provision would render "the words 'unique practices' superfluous." Def.'s Resp. to Suppl. Brs. at 12 (citing *AMP Inc. v. United States*, 389 F.2d 448, 454 (Ct. Cl. 1968)).

This interpretation is consistent with the solicitation as a whole. *See Banknote Corp. of Am.*, 365 F.3d at 1353 (noting that the court "must consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions") (citing *Coast Fed. Bank*, 323 F.3d at 1038). The RFP called for a firm-fixed-price contract with economic price adjustment, *see* AR 88-5251, which "places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss," FAR § 16.202-1. With a firm-fixed-price contract, the offeror bears the risk of proposing an unrealistically low price, not the agency. The RFP also provided for a lowest-price, technically acceptable award where price would be evaluated based only upon "[t]otal price reasonableness, affordability, and balanced pricing." AR 88-5261 to -62.[12] Unlike a price realism analysis, where the agency "investigates whether the contractor is proposing a price so low that performance of the contract

---

[11]Greenland Contractors asserts that the Air Force's position regarding this provision has changed over time, *see* Greenland Contractors' Mot. at 28-31, but even if this were true, the court's interpretation of a solicitation is a question of law that is addressed *de novo*, *see, e.g.*, *CBY Design Builders*, 105 Fed. Cl. at 327.

[12]Greenland Contractors responds that the provision advising offerors to provide "justification for unique practices that significantly lower pricing," AR 88-5265, is a stand-alone pricing-evaluation criterion because it appears in the pricing section of the RFP, *see* Greenland Contractors' Mot. at 31-32. This interpretative argument is not persuasive, as Greenland Contractors overlooks the fact that the RFP explicitly provides for only three pricing criteria: price reasonableness, affordability, and balanced pricing. *See* AR 88-5262, 5265. The relevant provision referencing "significantly lower pricing" was to be used by the agency in analyzing pricing, but it did not create a separate pricing criterion that would require the Air Force to evaluate justifications for lower prices.

will be threatened," a price reasonableness analysis "has the goal of preventing the government from paying too much for contract work." *DMS All-Star Joint Venture*, 90 Fed. Cl. at 657 n.5. The Air Force's cost evaluation was thus directed to ensuring that prices were not too high; the RFP did not include a price realism analysis that would have required the agency to evaluate whether prices were too low. *See Raymond Express Int'l, LLC v. United States*, 120 Fed. Cl. 413, 422 n.4 (2015) (restricting the court's analysis of the solicitation to price reasonableness where the solicitation did not require price realism and the plaintiff failed to identify any provision that would indicate otherwise).[13]   Because the offerors bore the risk of unrealistically low pricing and the RFP called for a price reasonableness evaluation rather than a price realism analysis, the RFP did not require an evaluation of significantly lower pricing.  Rather, as the government notes, "the Air Force advised offerors that any 'unique practices' that significantly lower their pricing should be justified so that the Air Force c[ould] ensure that [such practices were] technically acceptable." Def.'s Cross-Mot. at 47.[14]

  2.  *The Air Force's price evaluation.*

    Greenland Contractors previously asserted that the Air Force did not evaluate the other offerors' ability to reduce pricing through the use of United States-based sources, Greenland Contractors' Mot. at 33-34, but this court and the Federal Circuit have already rejected this contention and held that the RFP's reference to Danish and Greenlandic sources was not an evaluation criterion, *see Per Aarsleff I*, 121 Fed. Cl. at 631; *Per Aarsleff II*, 829 F.3d at 1314-16. Greenland Contractors now states that its reference to Danish and Greenlandic sources was only

---

[13]Although a price realism analysis may apply to firm-fixed price contracts in certain "exceptional cases," *see* FAR § 15.404-1(d)(3), the terms of the RFP indicate that price realism does not apply to this procurement and Greenland Contractors does not argue otherwise, *see* Greenland Contractors' Reply at 23.  Greenland Contractors states that it is not attempting to impose a price realism analysis on the Air Force, *id.*, but its interpretation of the RFP in effect would require such an analysis because it is contending that the Air Force had to evaluate justifications for significantly lower pricing, *see* FAR § 15.404-1(d)(1) (stating that a cost realism analysis involves "reviewing and evaluating specific elements of each offeror's proposed cost estimate to determine whether the estimated proposed cost elements are realistic for the work to be performed; reflect a clear understanding of the requirements; and are consistent with the unique methods of performance and materials described in the offeror's technical proposal"). The RFP simply did not impose a requirement for a price realism analysis of this type on the Air Force.

[14]Exelis Services agrees with the government's conclusion but interprets the relevant language in the RFP slightly more narrowly, stating that the provision only relates to the Air Force's technical evaluation of the "Downward Pricing" sub-factor, which requires offerors to describe the technical efficiencies used in achieving downward pricing. *See* Def.-Intervenor Exelis Services A/S' Suppl. Br. Submitted in Accordance with the Court's Jan. 31, 2017 Order ("Exelis Services' Suppl. Br.") at 15-16, No. 15-272, ECF No. 21.  GAO took the same position as Exelis Services, and in doing so noted that the Downward Pricing sub-factor indicated the Air Force's concern with "prices that were not too high." *Per Aarsleff* (GAO), 2015 WL 1004252, at *14 n.14.  In acting on Greenland Contractors' protest grounds, the court need not resolve the different approaches taken by the government and Exelis Services.  Under either approach, the Air Force was not required to evaluate whether offerors justified significantly lower pricing and Greenland Contractors' interpretation is unreasonable.

"one example," and further claims that "the Air Force never sought to have any of the offerors justify any of the[ir] significantly lower prices."  Greenland Contractors' Suppl. Br. at 8.  However, as discussed *supra*, the relevant RFP provision related to offeror justifications for unique practices, not lower prices.  Greenland Contractors has simply failed to identify any unique practice that went unjustified or unevaluated.

## CONCLUSION

For the reasons stated, Greenland Contractors' motion for judgment on the administrative record is DENIED, and the government's and Exelis Services' cross-motions are GRANTED.  Accordingly, Greenland Contractors' request for injunctive relief is DENIED.  The clerk shall enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge